### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY CASHMAN, ET AL | : | NO: 3:23-cv-00177 (VDO) |
| V. | : | |
| KATHLEEN S. KING, ZONING | : | |
| ENFORCEMENT OFFICER FOR THE | : | |
| TOWN OF CLINTON, ET AL | : | MARCH 18, 2025 |

### PLAINTIFFS, JEFFREY CASHMAN AND PATRICIA CASHMAN,

### LOCAL RULE 56(A)2 DISPUTED ISSUES OF MATERIAL FACT

Pursuant to Fed.R.Civ.P 56 and D.Conn.LCiv.R. 56(a)2, the plaintiffs, Jeffrey Cashman and Patricia Cashman, (herein collectively referred to as "The Cashman's") respectfully respond to the defendant's motion for summary judgment and urge the court to deny it. Through this response, the plaintiffs will demonstrate that there are multiple disputed issues of material fact.

### I.   FACTUAL AND PROCEDURAL BACKGROUND:

The Local Rule 56(a)3 statement of Disputed Issues Of Material Facts is adopted in its entirety and incorporated herein by reference.  Additional relevant facts are set forth as necessary.

### II.   INTRODUCTION:

The Cashmans intend to show that the defendant's claim of Audita Querela failure, in this case, is incorrect.  The Cashmans will show through evidentiary means and affidavits that this is not only a zoning case but a criminal one.  Both the zoning and criminal aspects have only selectively and not in its entirety,  been brought forth before the court.  The

Cashmans had no control over this and therefore it is fully possible that the judgments that have been previously rendered would have been different.

> "Audita querela is a remedy granted in favor of one against whom execution has issued on a judgment, the enforcement of which would be contrary to justice because of (1) matters arising subsequent to its rendition, or (2) prior existing defenses that were not available to the judgment debtor in the original action, or (3) the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor had no control." ***Oakland Heights Mobile Park, Inc. v. Simon, 40 Conn. App. 30, 32, 668 A.2d 737, 739 (1995).***

III.    The Cashman's dispute the following issues of material fact regarding the defendant's summary judgment statements:

*8. "On or about April 16, 2012, then-ZEO Thomas Lane issued an Order to Discontinue to Plaintiffs, citing the Plaintiffs' construction of a corral fence enclosure within certain minimum setbacks for an R-80 Residential District. (Hereinafter the "April 2012 Order to Discontinue.") Specifically, the April 2012 Order to Discontinue cited violations of Zoning Regulations 26.1.4(h)(1), 25.10.6, and 25.1086. See April 16, 2012, Order to Discontinue. Ex. D."*

**Response:**

<u>*All cited material is from the Interrogatories and Production required by the defendants.*</u>
Zoning Enforcement Officer Thomas Lane had no authority according to the Connecticut State Statutes, which state "Sec. 8-2h. Zoning applications filed prior to change in zoning regulations not required to comply with change. Applications for building permit or

certificate of occupancy filed prior to adoption of zoning regulations not required to comply with regulations." This indicates that the Town of Clinton zoning changes of January 1, 2012, requiring a special exception permit were not enforceable to an already legally existing non-conforming use property, such as the Cashman's. **Copy of 2013 Town of Clinton Zoning Regulations Sec 24.1.44 (pg. 2404 or 255 of 352) <u>Ex. J</u> Connecticut General Statutes Chapter 124 Sec. 8-2h (pg. 2/72). <u>Ex. B</u>** It is not disputed that the Cashman's purchased the property at 66 River Rd, Clinton CT. in August of 1987, however, there is documentation from Barbara Swan, ZEO at the time, which clearly shows that the Cashman's property was deemed non-conforming and that it was approved by the active zoning boar at that time. **See Copy of 1988 letter from Barbara Swan and zoning board meeting minutes. <u>Ex. A.</u>** Also, on October 30, 1990 the Cashman's fully complied with the Town of Clinton's non-conforming requirements by completing an APPLICATION TO THE ASSESSOR FOR CLASSIFICATION OF LAND AS FARM LAND showing in the "General Description and use of land" section the multiple ways the Cashmans intended to utilize the property for agricultural income. **Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) <u>Ex. I.</u>** The Town of Clinton zoning regulations that were in effect at the time were the 1987 edition, which states that non-conforming properties may be used as "nursery, truck garden, or farm", **1987 Town of Clinton Zoning Regulations Sec. 13.2.(pg. 48 or 58 of 108) <u>Ex, F.</u>** Not only are these regulations accessible to ZEO Tom Lane, but he is required to follow them and is bound by his knowledge as ZEO to protect the rights of the property-owning citizens of Clinton. **1987 Town of Clinton Zoning Regulations Sec. 3.5.1 (pg. 14 or pg 18 of 108) <u>Ex. D.</u>** Tom Lane was at the Cashman's property on August 7, 2009 as is

shown in the inspection document provided.  ZEO Lane's conclusion was "no violation were observed on the site".  ZEO Lane had knowledge of the Cashman's farming operation on their property.  **SKMBT_C30012112014160_0011 Tom Lane Ex. E.**
In conclusion, the Cashman's dispute the defendant's material fact based on the documents provided that show their property was deemed non-conforming by an authorized ZEO and Zoning board before April 16, 2012 and according to CT. state statute listed above those changes do not apply to the Cashman's property.  ZEO Lane had all of the above documents accessible to him and he had NO authority to enforce any zoning regulations on the Cashman's property.


*9. The April 2012 Order to Discontinue also stated "This order may be appealed to the Zoning Board of Appeals of the Town of Clinton within 15 days of its receipt." See April 16, 2012, Order to Discontinue. Ex. D.*

**Response:**

_All cited material is from the Interrogatories and Production required by the defendants._
As mentioned above, there was no need for the Cashman's to go to the Zoning Board of Appeals since this zoning change of January 1, 2012, did not apply to their property due to its being deemed legally existing non-conforming use. **Copy of 2013 Town of Clinton Zoning Regulations Sec 24.1.44 (pg. 2404 or 255 of 352) Ex. J,  Connecticut General Statutes Chapter 124 Sec. 8-2h (pg. 2/72).  Ex. B ,  See Copy of 1988 letter from Barbara Swan and zoning board meeting minutes. Ex. A., 1987 Town of Clinton Zoning Regulations Sec. 13.2.(pg. 48 or 58 of 108) Ex, F.,  1987 Town of Clinton Zoning Regulations Sec. 3.5.1 (pg. 14 or pg 18 of 108)  Ex. D.,**

**SKMBT_C30012112014160_0011 Tom Lane <u>Ex. E.</u>, Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) Ex. I.**


    *10. Plaintiffs did not file an appeal from the April 2012 Order to Discontinue within the noticed 15-day window. Lane v. Cashman, MMX-CV12-6008324-S, Dkt. 146.00. Ex. E; Deposition of J. Cashman, at 94:1-94:6. Ex. C.*

**Response:**

<u>*All cited material is from the Interrogatories and Production required by the defendants.*</u>

No appeal was needed due to the Cashman's property being deemed legally existing non-conforming use.  The Cashman's property has been in an agricultural farm status since it was purchased in 1987.  It was also used as farm by the previous owners, Audrel and Doris Dotson.  Mr. Dotson had animals over the years and applied for a building permit for a "Pole Barn".  The building permit was granted he was issued a certificate of occupancy on July 22, 1985.  The barn has been used by the Cashman's for livestock and was in existence before the Cashman's purchased the property. **Copy of 1985 application, building permit, and certificate of occupancy for barn on property. <u>Ex. K</u> , Copy of 1991 -2011 photos #'s 28 - 32 of 43. <u>Ex. L</u>**

This is in addition to the above mentioned evidence that ZEO Tom Lane had NO authority to enforce the new 2012 Town of Clinton zoning regulation change. **Copy of 2013 Town of Clinton Zoning Regulations Sec 24.1.44 (pg. 2404 or 255 of 352) <u>Ex. J,</u> Connecticut General Statutes Chapter 124 Sec. 8-2h (pg. 2/72).  <u>Ex. B</u> ,  See Copy of 1988 letter from Barbara Swan and zoning board meeting minutes. <u>Ex. A.,</u> 1987 Town of Clinton Zoning Regulations Sec. 13.2.(pg. 48 or 58 of 108) <u>Ex, F.,</u>  1987**

Town of Clinton Zoning Regulations Sec. 3.5.1 (pg. 14 or pg 18 of 108)  Ex. D.,

SKMBT_C30012112014160_0011 Tom Lane Ex. E., Copy of CASE-2 105.00 Return

of Record 2 of 3 (1) (pg. 64 of 186) Ex. I.


    11. On or about September 12, 2012, then-ZEO [Thomas Lane] brought against

Plaintiffs, an Enforcement Action, pursuant to C.G.S. § 8-12, seeking to enforce April

2012 Order to Discontinue. (hereinafter the "2012 Enforcement Action"). See Lane v.

Cashman, MMX-CV12-6008324-S, Dkt. 146.00. Ex. E.

 **Response:**

_All cited material is from the Interrogatories and Production required by the defendants._

The enforcement action that was brought against the Cashman's by then ZEO, Tom Lane,

on or about September 12, 2012, relied upon CGS CHAPTER 124*ZONING Sec. 8-12.

Sec 8-2(a) states " Such regulations shall not terminate or deem abandoned a

nonconforming use, building or structure unless the property owner of such use, building

or structure voluntarily discontinues such use, building or structure and such

discontinuance is accompanied by an intent to not reestablish such use, building or

structure." **Connecticut General Statutes Chapter 124 Sec. 8-2(a).** "Sec. 8-2h. Zoning

applications filed prior to change in zoning regulations not required to comply with

change. Applications for building permit or certificate of occupancy filed prior to

adoption of zoning regulations not required to comply with regulations." **Connecticut**

**General Statutes Chapter 124 Sec. 8-2h (pg. 2/72)**

12. On November 14, 2012, Plaintiffs filed an Answer and Special Defenses in that matter, asserting their use of the Property as a farm to be a legal non-conforming use protected by statute. See Lane v. Cashman, MMX-CV12-6008324-S, Dkt. 146.00. Ex. E.

**Response:**

<u>All cited material is from the Interrogatories and Production required by the defendants.</u>
**See Copy of 1988 letter from Barbara Swan and zoning board meeting minutes. <u>Ex. A.,</u> Connecticut General Statutes Chapter 124 Sec. 8-2h (pg. 2/72).  <u>Ex. B,</u> 1987 Town of Clinton Zoning Regulations Sec. 3.4 (pg.12 or 16 of 108)  <u>Ex. C ,</u> 1987 Town of Clinton Zoning Regulations Sec. 3.5.1 (pg. 14 or pg 18 of 108)  <u>Ex. D,</u> SKMBT_C30012112014160_0011 Tom Lane <u>Ex. E,</u> 1987 Town of Clinton Zoning Regulations Sec. 13.2.(pg. 48 or 58 of 108) Ex, F , Copy of 1991 -2011 photos #'s 1, 22, 36-39, 41-43. <u>Ex. G.,</u> 2018 Town of Clinton Zoning Regulations Sec 5.2.1 (pg. 502 or 62 of 474) <u>Ex. H,</u> Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) Ex. I, Copy of 2013 Town of Clinton Zoning Regulations Sec 24.1.44 (pg. 2404 or 255 of 352) <u>Ex. J,</u> Copy of 1985 application, building permit, and certificate of occupancy for barn on property. <u>Ex. K</u> , Copy of 1991 -2011 photos #'s 28 - 32 of 43. <u>Ex. L.</u>**

13. On or about November 15, 2012, then-ZEO Thomas Lane issued an Order to Discontinue to Plaintiffs. (hereinafter "November 15 Order to Discontinue") citing the Plaintiffs' ongoing violation of Zoning Regulations 23.3.1, 24.1.21, 24.1.62, 24.1.70, 24.1.76, 26.1.4(d)(1), 26.1.4(m), and 11.5.1. Among other things, the November 15 Order to Discontinue cited to Plaintiffs, retail sale of firewood, mulch, and other associated

*activities, which are prohibited in an R-80 Zoning District; Plaintiffs' importation of*

*woodchips, logs, and other like materials onto the Property from outside sources to*

*process into fire wood and mulch, and other associated activities, which are prohibited in*

*an R-80 Zoning District; Plaintiff's wholesale of firewood, mulch, and other associated*

*activities, which are prohibited in an R-80 Zoning District; Plaintiffs' storage of*

*equipment, machinery, trucks, and other items associated with business on the Property,*

*and other associated activities, which are prohibited in an R-80 Zoning District;*

*Plaintiffs' storage of dangerous materials beyond what is required for personal*

*residential use, and other associated activities, which are prohibited in an R-80 Zoning*

*District; Plaintiffs' parking of commercial vehicles exceeding the set maximum weight*

*limit being parked at the  Case 3:23-cv-00177-VDO Document 80-2 Filed 02/27/25 Page*

*4 of 12 Property, and other associated activities, which are prohibited in an R-80 Zoning*

*District. See November 15, 2012, Order to Discontinue. Ex. F.*

 **Response:**

<u>*All cited material is from the Interrogatories and Production required by the defendants.*</u>

Although in an R-80 zone, the Cashman's were within their right, as a legally existing

non-conforming property to do all of the items listed in the defendant's claim above.

The Cashman's passed the State of CT. Department of Agriculture Inspection by

Inspector Tim McGuire. **Copy of June 21, 2012 DOA Special inspection report**

**discussing generally acceptable agricultural practices being performed <u>Ex. M</u>,**    The

Cashman's had a meeting with ZEO Tom Lane the at the property "a few days after the

issuance of the April 16, 2012 Notice to Discontinue". **Compl.    67**  ZEO Lane asked

the Cashman's to get some documentation from the State of CT. that they were

considered farm. The Cashman's reached out to Mr. Ron Olson, a Marketing/Inspection Rep. for the State of CT. Department of Agriculture and he provided documentation dated June 21, 2012 regarding the classification of the property as to farm, forest, or open space. **Copy of June 15, 2012 CTDOA report from Ronald Olson discussing farm, forest or open space, <u>Ex. N</u>** In addition to The State of CT. Department of Agriculture, the Cashman's contacted the Department of Energy and Environmental Protection (DEEP) concerning the mulch operation on the property. Mr.Frank Gagliardo sent an email with a description of first grinds. This letter states in   2 that "you *do not* require a permit". The Cashman's were not manufacturing a product therefore a permit was never required to sell their mulch, which is a nursery product.

**SKMBT_C300121120122001_0001, <u>Ex. O</u>**


    14. *That November 15, 2012, Order to Discontinue stated "This order may be appealed to the Zoning Board of Appeals of the Town of Clinton within 15 days of its receipt." See November 15, 2012, Order to Discontinue. Ex. F.*

 **Response:**
<u>*All cited material is from the Interrogatories and Production required by the defendants.*</u>
No appeal was necessary because ZEO Tom Lane had NO authority to enforce the new zoning regulations adopted 1/1/2012. **See Copy of 1988 letter from Barbara Swan and zoning board meeting minutes. <u>Ex. A.,</u> Connecticut General Statutes Chapter 124 Sec. 8-2h (pg. 2/72). <u>Ex. B,</u> 1987 Town of Clinton Zoning Regulations Sec. 3.4 (pg.12 or 16 of 108)  <u>Ex. C ,</u> 1987 Town of Clinton Zoning Regulations Sec. 3.5.1 (pg. 14 or pg 18 of 108)  <u>Ex. D,</u> SKMBT_C30012112014160_0011 Tom Lane <u>Ex. E,</u> 1987 Town**

**of Clinton Zoning Regulations Sec. 13.2.(pg. 48 or 58 of 108) Ex, F , 2018 Town of Clinton Zoning Regulations Sec 5.2.1 (pg. 502 or 62 of 474) Ex. H, Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) Ex. I, Copy of 2013 Town of Clinton Zoning Regulations Sec 24.1.44 (pg. 2404 or 255 of 352) Ex. J,**

*15. Plaintiffs did not file an appeal from the November 15, 2012, Order to Discontinue within the allotted 15-day window. See November 15, 2012, Order to Discontinue. Ex. F.; See also Lane v. Cashman, MMX-CV12-6008324-S, Dkt. 146.00. Ex. E.*

 **Response:**

<u>*All cited material is from the Interrogatories and Production required by the defendants.*</u>
An appeal was unnecessary because ZEO Tom Lane had NO authority to enforce the new zoning regulations adopted 1/1/2012. **See Copy of 1988 letter from Barbara Swan and zoning board meeting minutes. <u>Ex. A.,</u> Connecticut General Statutes Chapter 124 Sec. 8-2h (pg. 2/72). <u>Ex. B,</u> 1987 Town of Clinton Zoning Regulations Sec. 3.4 (pg.12 or 16 of 108) <u>Ex. C ,</u> 1987 Town of Clinton Zoning Regulations Sec. 3.5.1 (pg. 14 or pg 18 of 108) <u>Ex. D,</u> SKMBT_C30012112014160_0011 Tom Lane <u>Ex. E,</u> 1987 Town of Clinton Zoning Regulations Sec. 13.2.(pg. 48 or 58 of 108) Ex, F , 2018 Town of Clinton Zoning Regulations Sec 5.2.1 (pg. 502 or 62 of 474) <u>Ex. H,</u> Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) Ex. I, Copy of 2013 Town of Clinton Zoning Regulations Sec 24.1.44 (pg. 2404 or 255 of 352) <u>Ex. J,</u>**

*16. On or about November 18, 2012, three days after receiving November 15, 2012, Order to Discontinue, Plaintiff Jeff Cashman went to the Clinton Police Department claiming there were "illegal entries into a Zoning file, known as a 'Street File'...he had discovered documents that he was not aware had existed in his file." See Clinton Police Report, 12-19971-OF, November 18, 2012. Ex. G.*

 **Response:**

_All cited material is from the Interrogatories and Production required by the defendants._

Jeff Cashman did go to the Clinton Police Department on November 18, 2012, to report fraudulent letters in his Town of Clinton Land Use " street file".  The dispute the Cashman's have is that it should be noted that this police report as well as the follow-up one of Forgery Second Degree dated December 15, 2014, written and investigated by Patrol Officer Christopher Varone are both regarding "letters" that the Cashman's believed were entered into their Land Use file fraudulently. Patrol Officer Varone "However, physical evidence cannot be found proving either case." **Copy of November / December 2012 and December 2014 police reports regarding fraudulent documents placed in street filed by Tom Lane.pdf,(pg. 11 0f 12    5 ) Ex. Q**

*18. Approximately seven months earlier, Plaintiffs provided those allegedly fraudulent documents to the ZEO, a few days after April 16, 2012. Compl.    66-67.*

 **Response:**

_All cited material is from the Interrogatories and Production required by the defendants._

The Cashman's complaint refers to two separate events with regard to criminal activity. One is the "False Entry into Record by a Public Officer" and the "Forgery Second Degree" that are noted in the police report of November 18, 2012, investigated by Officer Daniel Foito and the follow-up police report for "Forgery Second Degree" dated December 15, 2014, written and investigated by Patrol Officer Christopher Varone.  The second incident of criminal activity is referred to in the Cashman's complaint.  This second incident was never brought before the court and is a reason for the Writ of Audita Querela.  The reference to *Compl.  66-67* in the defendant's claim was not interpreted clearly by the defendant as it was incomplete.  To understand the intention behind the Cashman's claim you have to include    64-68 of the Complaint.

 "64. …. and to include false and improper changes to original documents on file at the Town Hall with the purpose of removing, changing and/or modifying the status of the Property as a recognized farm."

This APPLICATION TO THE ASSESSOR FOR CLASSIFICATION OF LAND AS FARM LAND is the original one that the Cashman's applied for on October 30, 1990.  It was written by hand, has a very detailed description of the agricultural use that the land would be used for and includes the PO Box number that the Cashman's had when they purchased the property.  They kept this P.O. Box until they were ready to have mail come to their property address.  It made the transition smoother while making the physical move.  The Cashman's used both addresses for any documents they filled out.  The Cashman's had no computer at that time and bills etc. were written longhand  **Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) Ex. I, Copy of 1987-1990 business records, (pg. 15, 32) Ex. DD**

"65. They also learned that on two separate occasions, an official in the Office

of the Planning and Zoning Commission, the Land Use Office or the Assessor's Office

entered into the official Computer records of the Town to access records: Once on

February 2, 2012 at 16:23 military time (4:23 pm); and again on February 29, 2012 at

11:29 military time (11:29 am)."

The Town of Clinton paid an invoice dated August 1, 2011 Invoice #20260 for Atty.

David Royston from Dzialo, Pickett and Allen.  This invoice shows that Atty. Royston

did research regarding "Review section 8-11 regarding Disqualification; Preparation of

letter to Commission regarding standards;"  **Copy of October 2011 through May 2013**

**detailed attorney bills from Dzialo, Pickett and Allen, <u>Ex. Y.</u>** Shortly after this

research the Commission adopted new regulations.   **Copy of 2013 Town of Clinton**

**Zoning Regulations Sec 24.1.44 (pg. 2404 or 255 of 352) <u>Ex. J</u>**  These new regulations

shouldn't have affected the Cashman's due to their legally existing non-conforming

status, as has been discussed previously.  **Copy of 1988 letter from Barbara Swan and**

**zoning board meeting minutes. <u>Ex. A.,</u> Connecticut General Statutes Chapter 124**

**Sec. 8-2h (pg. 2/72).  <u>Ex. B,</u> 987 Town of Clinton Zoning Regulations Sec. 3.4 (pg.12**

**or 16 of 108)  <u>Ex. C ,</u>**

"66. The Cashmans discovered that certain paperwork on file with the Town

Assessor's Office had been removed and replaced by a forged and fraudulent version of

that document which purported to limit the Cashmans' use of the property as a

"Christmas Tree Farm," but the Cashmans had retained a copy of the original document

which had been replaced!"

You can see by the time stamp and dated on these Field Cards in the upper right hand corner that someone entered the Municipality office and removed the card.   **Copy of RoR n68 CASE-2 105.00 Return of Record 2 of 3, (pg. 2) Ex. AA**

 Then the card was returned, but the switch had been made! **RoR n59 CASE-2 105.00 Return of Record 2 of 3,(pg. 2) Ex. BB,  RoR n58 CASE-2 105.00 Return of Record 2 of 3, (pg. 3) Ex. CC**

This paragraph refers to the meeting that was held with Tom Lane shortly after the April 16, 2012 Order to Discontinue.  It was at that time that the Cashman's showed ZEO Lane a copy of the Original APPLICATION TO THE ASSESSOR FOR CLASSIFICATION OF LAND AS FARM LAND, commonly known as  PA-490. **Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) Ex. I**  The last portion of this paragraph notes that the  Cashman's had kept a copy of this document in their home files and when ZEO Lane came out for the meeting the copy they showed him was from their home files, not the Town of Clinton file.  When ZEO Lane saw this document he then asked them for the State of CT. letters.   **Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) Ex. I, Copy of June 15, 2012 CTDOA report from Ronald Olson discussing farm, forest or open space, Ex. N, SKMBT_C300121120122001_0001, Ex. O**

"67. This document was part of the paperwork that they showed to the ZEO Thomas Lane when he met with the Cashmans a few days after the issuance of the April 16, 2012 Notice to Discontinue, but the Cashmans were not aware at that time that the document has been criminally and/or fraudulently forged."

During the meeting with the Cashman's and ZEO Tom Lane the Cashman's were unaware that the copy in their "street file" at the Town of Clinton Land Use and

Assessors office had been forged. This is the second criminal act that was spoken of in the Introduction.  There was a forged APPLICATION TO THE ASSESSOR FOR CLASSIFICATION OF LAND AS FARM LAND, commonly known as  PA-490 put into the Cashman's municipal files in the Land use office as well as the Assessors office.

**RoR n58 CASE-2 105.00 Return of Record 2 of 3, (pg. 3) <u>Ex. CC,</u>**

"68. The forged and fraudulent document is still present in the public record to this day, and each day that it continues to remain present in the official records of the Town of Clinton concerning the Cashman's property, it has a continuing adverse impact upon the status of the Cashmans' farm, and the property rights of the Cashmans in furtherance of a continuing practice and policy of discrimination."

 **COMPL.**   64-68


*29. The Appellate Court, in denying Plaintiffs' appeal, noted "the record reflects the existence of many undisputed facts, all of which tend to support the court's determination that injunctive relief was warranted. Specifically, the facts reflect that the defendants admittedly failed to exhaust their administrative remedies by appealing from either of the orders to discontinue and that they admittedly violated multiple zoning regulations and manifested to the plaintiff an intent to continue activities that violated zoning regulations. See Lane v. Cashman, MMX-CV12-6008324-S, Dkt.149.00, at 439 440. Ex. M.*

**Response:**

<u>*All cited material is from the Interrogatories and Production required by the defendants.*</u>

The Cashman's tried in multiple ways to exhaust their administrative remedies.  First and foremost, they did not need to because they are legally existing non-conforming use, but

they did try to notify the correct authorities of the corruption in the Town of Clinton municipality.  They started with the sitting First Selectman Willie Fritz when the issue first arose and they became aware of it. **Copy of July 10, 2012 email from David Crow regarding meeting with Willie Fritz, Ex. P.**  Then when that fell on deaf ears and the enforcement from ZEO Tom Lane continued Jeff Cashman sent emails to the then sitting First Selectwoman, Christine Goupil. **Copy of November 30, 2017 email from Jeff Cashman to Christine Goupil regarding having a sit down meeting, Ex. R , Copy of April 29, 2019 email from Jeff Cashman to Christine Goupil regarding contacts for current FBI Personnel, Ex. T .** When nothing was resolved regarding the forged documents that were **STILL IN POSSESSION** of the municipality Jeff Cashman went to the FBI.  **FBI KS, Ex. X.**  After that Mr. Cashman reached out to the States Attorney's office. **Affidavit States Atty ltr, Ex. U, STATES ATTNY letter timestamp, Ex. V**   At this time it was referred to the Middletown States attorney's office.   **Affid Gailor emails, Ex. W, Gailoremails 2021, Ex. EE**

 The one thing that all of these law enforcement agencies have in common is that they all knew there was a crime being committed against the Cashman's within our town municipality.  The fact was that they only looked at the minor offenses of false entry and fraud, which have statutes of limitations in CT that they could not override.  However, the fact is that the forged document is still in the Cashman's files which makes it a crime Felony of possession of forged documents and that has no statute of limitations in CT.  Connecticut law gives exceptions to the statute of limitations, particularly when it comes to offenses of forgery and possession of forged documents. Under Connecticut law, there is no statute of limitations for certain serious felonies, including forgery in the first degree. This provision applies to offenses considered particularly

severe or damaging, such as those involving forgery with the intent to defraud or in relation to financial transactions. **Chapter 952 Penal Code: Offenses, Part X, Sec. 53a-137-142, Ex. FF**


*31. On or about July 9, 2018, the Cashmans filed an application for a Special Exception Permit which would legally authorize the presence of livestock, the production and sale of mulch, manure and similar agricultural products. See Cashman v. Clinton Planning and Zoning, MMXCV196023630S, Ex. N; See December 10, 2018, Zoning Minutes, Ex. O.*

**Response:**

<u>*All cited material is from the Interrogatories and Production required by the defendants*</u>
The Cashman's didn't need to apply for a Special Exception Permit, because of their matter of right of the legally existing non-conforming use, but they were trying to fulfill the courts decision so desperate were they to get back to work and have this neverending criminal harassment over.  So they filed an application for a Special Exception.  The application was denied without reason given.  **2018 Town of Clinton Zoning Regulations Sec 5.2.1 (pg. 58)** <u>**Ex. GG**</u>


*36. In sustaining the Commissions' decision, the Court observed the following: "Unfortunately for the Cashmans, … unlike most special exception applications where the use in question has not yet been established and the impacts are still speculative, in this instance the use is established and ongoing. Many of the adverse impacts of the farm to the neighborhood are observable and visible, not only to the Commission members but also to those residing in this residential neighborhood. The record includes substantial documentary evidence and testimony that supports the conclusion… There were multiple*

*mentions of the odors and insect infestations associated with the keeping of livestock. Concerns were raised of the impact of these conditions on property values and one of the neighbor's inability to sell her property. Truck traffic with trucks coming and going for the delivery of mulch to customers in this residential area were also raised. Odors related to the mulch operation and the considerable piles of mulch are documented in this record. There was also evidence regarding the location of the livestock and the unsightly nature of the agricultural buildings in close proximity to at least six residences. There was testimony concerning poor drainage and storm water run-off problems as well as photographs showing poor drainage. When these facts are considered in light of the requirements of ... of the regulations, it is apparent that the Commission could properly have concluded that the requirements were not met in this case. The commission could have found from the evidence that having livestock in close proximity to six residential homes was not appropriate in the residential neighborhood, as it negatively impacted other properties. Traffic, odors, insect infestations, noise and having livestock and unsightly buildings in close proximity to residential homes are also facts which support that conclusion. The Commission could also have concluded that this property is simply not large enough to have a farm with livestock and a substantial mulch operation consistent with the regulations, where it might be properly permitted on another property with other topographical features and of a larger size." Cashman v. Clinton Planning and Zoning, MMXCV196023630S, Ex. N.*

**Response:**

<u>*All cited material is from the Interrogatories and Production required by the defendants*</u>

This is a perfect example of how pertinent information regarding our non-conforming use

as a farm has not been represented fully to the court.  The ZEO, Tom Lane, did not do his due diligence to protect our legal rights according to the Connecticut General Statutes and Town of Clinton Zoning Regulations at the time.  Instead, he did no accurate research on farm status in the regulations, but had the town Attorney research how to ELIMINATE the Cashmans farm from the zoning regulations. The court was defrauded by not having the entirety of the information available to them.  **Copy of 1988 letter from Barbara Swan and zoning board meeting minutes. <u>Ex. A.,</u> Connecticut General Statutes Chapter 124 Sec. 8-2h (pg. 2/72). <u>Ex. B,</u> 1987 Town of Clinton Zoning Regulations Sec. 3.4 (pg.12 or 16 of 108)  <u>Ex. C ,</u> 1987 Town of Clinton Zoning Regulations Sec. 3.5.1 (pg. 14 or pg 18 of 108)  <u>Ex. D,</u> SKMBT_C30012112014160_0011 Tom Lane <u>Ex. E</u>, 1987 Town of Clinton Zoning Regulations Sec. 13.2.(pg. 48 or 58 of 108) Ex, F , Copy of 1991 -2011 photos #'s 1, 22, 36-39, 41-43. <u>Ex. G.,</u> 2018 Town of Clinton Zoning Regulations Sec 5.2.1 (pg. 502 or 62 of 474) <u>Ex. H,</u> Copy of CASE-2 105.00 Return of Record 2 of 3 (1) (pg. 64 of 186) Ex. I, Copy of 2013 Town of Clinton Zoning Regulations Sec 24.1.44 (pg. 2404 or 255 of 352) <u>Ex. J,</u> Copy of 1985 application, building permit, and certificate of occupancy for barn on property. <u>Ex. K</u> , Copy of 1991 -2011 photos #'s 28 - 32 of 43. <u>Ex. L.</u> Copy of October 2011 through May 2013 detailed attorney bills from Dzialo, Pickett and Allen, <u>Ex. Y</u>**

In conclusion, farming is an agricultural business.  That means it provides an income for the farmer. It's not a free service but provides services for those that need them.  Sprucey Hill Farm has provided nursery and landscaping to those in surrounding communities for 25 years before this issue arose due to complaints from a neighbor who had purchased her home after the

Cashman's, all the while knowing she was moving next to a farm. The Cashman's have made their income from the services of the farm for decades before they were targeted with zoning regulations that do not affect them. Mr. Cashman has sat on the Zoning Board for a term of four years as an alternate and is very knowledgeable as to the regulations as a whole and specifically as they pertain to farming.

The Town of Clinton has reason to want the Cashman's property to be removed from its legal non-conforming and return to residential status. The taxes for the property would increase greatly over the PA-490 that it is now, and the illgotten liens, that have been attached to the property will bring them revenue also, should the Cashman's be forced out of their home. However, the legally existing non-conforming use will still prevail since it goes "with the land" and not the owner.

The court was not given full information on the criminal aspect of this case. The town of Clinton is at this time in possession of forged documents. That is a crime. The legal avenues that the Cashman's followed were aimed towards exposing the felony criminal acts of the Town of Clinton that started with ZEO Tom Lane and was exacerbated by all those that followed. The States Attorney's office and even the FBI felt there was something to investigate. Unfortunately, no one seemed to make the courts aware of it so it could be corrected. Now the Cashman's will be the ones to continue to suffer.

Respectfully, we ask this honorable court to take into consideration the two things that previous courts have not been apprised of, the legally existing non-conforming use of the property before the zoning change of 1/1/2012 and the felony criminal act that is ongoing today.

**RoR n58 CASE-2 105.00 Return of Record 2 of 3, (pg. 3) <u>Ex. CC,</u> Copy of 1987 - present business records, pgs 1-158 <u>Ex. HH,</u> List of past Planning and Zoning Commission members, pgs 7-9, Ex. II**

## **CERTIFICATION**

I hereby certify that on March 20, 2025, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by U.S. Mail to as indicated on the Notice of Electronic Filing.  Parties may acess the filing through the Court's CM/ECF System.

Atty. Thomas R. Gerarde                           Atty. Tyler Carroll
Howd & Ludorf, LLC                                Howd & Ludorf, LLC
100 Great Meadow Road, Ste. 201                   100 Great Meadow Road, Ste. 201
Wethersfield, CT 06109                            Wethersfield, CT 06109
tgerarde@hl-law.com                               tcarroll@hl-law.com

Robert Leitze
37 Boston Street
Guilford, CT. 06437
rleitze@leitze.com

Patricia Cashman

Patricia Cashman

Self - Representing

Jeffrey Cashman

Self - Representing